UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DUSTIN MOORE, *et al.* | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| v. | § | CIVIL NO. SA-15-CV-00432-RCL |
| | § | |
| PERFORMANCE PRESSURE PUMPING | § | |
| SERVICES, LLC, *et al.* | § | |
| | § | |
| DEFENDANTS. | § | |

## Memorandum Opinion

The Court has before it Defendant Terry Lane's Motion for Summary Judgment. ECF No. 146. Upon consideration, the Court will deny Mr. Lane's motion.

### Background

This is an overtime case under the Fair Labor Standards Act ("FLSA"). The movant, Mr. Terry Lane, was employed by the corporate defendants in this suit, Performance Pressure Pumping Services, LLC ("Performance") and Epic Wireline Services, LLC ("Epic"). In addition to the corporate defendants, the plaintiffs have also sued Mr. Lane in his individual capacity, alleging that he was also their employer under the FLSA and is jointly and severally liable for their damages along with Performance, Epic, and several other individuals. Mr. Lane now moves for summary judgment, arguing that there is no genuine dispute that he does not qualify as an employer under the FLSA. All of the evidence for and against Mr. Lane is contained in Mr. Lane's 2016 deposition and his 2018 sworn affidavit.

## Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of showing these things. *Willis v. Roche Biomedical Lab., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact "is material if its resolution could affect the outcome of the action." *Thompson v. Goetzmann*, 337 F.3d 489, 502 (5th Cir. 2003). The Court must view the facts and any inferences to be drawn from them in the light most favorable to the non-movant. *Id.* But the Court may not make credibility determinations or weigh the evidence. *Austin v. Will–Burt Co.*, 361 F.3d 862, 866 (5th Cir. 2004).

## Analysis

The parties largely agree on the legal standard for establishing joint employer liability against an individual. Under the FLSA, an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Fifth Circuit uses an "economic realities" test to see if a particular person or entity fits this description. "To determine whether an individual or entity is an employer, the court considers whether the alleged employer: (1) possessed the power to hire and fire employees; (2) supervised or controlled employee work schedules or conditions of employment; (3) determined the rate or method of payment; and (4) maintained employee records." *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012). No single factor is dispositive, and "a party need not establish each element in every case." *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014). Rather, the purpose of these factors is to guide a court's analysis as it considers whether the circumstances as a whole show

that a person "effectively dominates [a corporation's] administration or otherwise acts, or has the power to act, on behalf of the corporation vis-à-vis its employees." *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993). Where both a corporation and a corporate officer satisfy the definition of "employer" under the FLSA, "the officer and the corporation are jointly and severally liable for unpaid overtime wages themselves." *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984); *see also Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 251 (5th Cir. 2012) ("The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies.").

## I. Mr. Lane's Job Titles Are Not Relevant to this Analysis.

In their response to the motion for summary judgment, the plaintiffs make much of the job titles Mr. Lane held—Vice President of Operations and, later, President of Operations. ECF No. 147 at 5 (referring to Mr. Lane's "significant titles"). But "[m]erely holding the position as an officer . . . of a company does not qualify an individual as an employer under the FLSA where the operational control does not exist." *Guyton v. Legacy Pressure Control*, No. 15-cv-01075, 2017 WL 244868 at *3 (W.D. Tex. Jan. 18, 2017) (citing *Gray*, 673 F.3d at 355–56). The question is not whether Mr. Lane's title sounds like a title an employer would have, but whether Mr. Lane acted as an employer would act.

## II. There Is Evidence that Mr. Lane Possessed Some Power to Hire and Fire Employees.

The first factor the Court considers is whether Mr. Lane "possessed the power to hire and fire employees," as such power is typical of an employer. *Gray*, 673 F.3d at 355. The plaintiffs rely on statements in Mr. Lane's own deposition to make their case that he had the power to hire and fire employees. For example, the deposition contains the following exchange:

> Q. So Mike and you -- you pretty much are people who make the important decisions like, you know, whether to hire employees, fire employees --
>
> A. Yes.

ECF No. 146-1 at 9:4–7. A jury could interpret this as an admission that Mr. Lane and Mike (the Vice President of Operations under Mr. Lane) made hiring and firing decisions. Further, the deposition contains specific examples of Mr. Lane claiming to have hired and fired employees:

> Q. Who at Performance and Epic are responsible for policies, procedures, adopted at the company? . . .
>
> A. When it comes to safety, Brittany Radcliff because *I hired her.*

*Id.* at 10:4–5, 13–14 (emphasis added).

> Q. Okay. So have you just, on your own, made the decision without conferring with anybody else to fire anyone?
>
> A. Yes, I have. . . . A guy wrecked a truck and basically got a DUI.
>
> Q. Because that's a no-brainer?
>
> A. That's a no-brainer.
>
> Q. Any others?
>
> A. Not that I can remember right off hand.
>
> Q. Okay. So all the other terminations were done --
>
> A. Collectively.

*Id.* at 37:9–23. These passages seem to suggest that Mr. Lane had some power to hire and fire employees. They provide some evidence that he had unilateral power to do so. And they provide evidence that he was part of the collective body that had power over hiring and firing decisions.

In response to this, Mr. Lane suggests that the plaintiffs "rely on vague questions and answers contained in [his] deposition, where Lane is referencing others within the company." ECF No. 148 at 2. The Court disagrees. Looking at the quoted excerpts above, Mr. Lane is clearly talking about himself and the questions are not vague.

Mr. Lane also points to statements from his sworn affidavit, which was made nearly two years after his deposition was taken, and which purports to "clarify" his deposition, in an attempt to show that he had no actual hiring or firing power. *See generally* ECF No. 146-2. These

statements in the affidavit shade, and at times seem to contradict, statements made by Mr. Lane in his deposition. What Mr. Lane invites the Court to do, then, is essentially to weigh the credibility of the deposition and the affidavit and to credit the affidavit above the deposition. But the Court will not do this as the Court may not, in this summary judgment posture, make credibility determinations or weigh the evidence. *Austin*, 361 F.3d at 866.

Viewed in the light most favorable to the plaintiffs, a reasonable jury could, from the evidence before the Court, conclude that Mr. Lane had the power to hire and fire employees. It is not necessarily the most likely conclusion that a jury would reach, but it would not be an irrational conclusion. Therefore, the first factors weighs against summary judgment.

### III. There Is Evidence that Mr. Lane Supervised or Controlled Some Conditions of Employment.

The second factor the Court considers is whether Mr. Lane "supervised or controlled employee work schedules or conditions of employment." *Gray*, 673 F.3d at 355. There is no evidence that Mr. Lane controlled or oversaw employee work schedules, and the plaintiffs do not appear to contest this. But there is some evidence that Mr. Lane supervised employees generally and that he had some element of control over their working conditions. Mr. Lane's deposition contains this exchange:

> Q. So were you actually the person who was in charge of -- who was in charge?
> A. Mostly manpower. You know, people -- it was a lot of problems with just the overall morale was, like (MAKING NOISE), in the tank. But like, the company had been rode hard and put up wet, so to speak.
> Q. Uh-huh.
> A. And I was basically hired to get some people in line, you know. And, you know, things situated to where the company could respond and move in a more professional manner, if you will.

ECF No. 146-1 at 7:3–13. In this excerpt, Mr. Lane strongly suggests that he was the person in charge of manpower at Performance and Epic. That sounds like supervision. Mr. Lane also says that he was "hired to get some people in line." *Id.* at 7:10–11. That statement also is evidence that Mr. Lane had a supervisory role over Performance and Epic employees. The entire passage, taken as a whole, indicates that Mr. Lane's job was to preside over the manpower at Performance and Epic and to change the culture of the workplace. A reasonable jury could infer from this that Mr. Lane had some control over the conditions of work as well.

Mr. Lane's deposition also indicates that while he had no role in creating or controlling general operating policies and procedures, he did have some role to play in supervising and controlling safety conditions in the field.

> Q. Who at Performance and Epic are responsible for policies, procedures adopted at the company?
> \*\*\*
> A. When it comes to safety, Brittany Radcliff because I hired her. And I wanted to improve the safety part of this company.
> Q. Uh-huh.
> A. And she's put together a lot of procedures and policies in place that has done just that. When it comes to the operating policies and procedures that you have right here --
> Q. Yes.
> A. -- I ain't got a clue. I don't know.

*Id.* at 10:4–5, 13–22. Mr. Lane says that this passage merely shows that he wanted to improve safety at the company, and argues that a "desire to improve safety does not support" the conclusion that he supervised or controlled any conditions of employment. That is one way to look at the passage. But a reasonable jury could also conclude, because Mr. Lane desired to improve safety and hired someone to implement policies pursuant to that desire, that Mr. Lane had some level of control over those safety policies. And safety policies certainly affect the conditions of employment under which an employee labors.

Because Mr. Lane's deposition contains evidence sufficient to find that he had some level of supervision or control over some aspects of the conditions of employment, the Court finds that this factor likewise weighs against granting Mr. Lane's motion for summary judgment.

## IV. There Is No Evidence that Mr. Lane Determined the Rate or Method of Pay at Performance and Epic.

The third factor the Court considers is whether Mr. Lane "determined the rate or method of payment" for employees at Performance and Epic. *Gray*, 673 F.3d at 355. The Court concludes that there is no evidence that he did. The deposition excerpts that the plaintiffs cite to argue that he did are lengthy, so the Court will not quote them in full, but the Court will summarize their contents and discuss the conclusions that can be drawn therefrom.

First, the plaintiffs cite a lengthy passage in which Mr. Lane describes how employees were paid at the "market rate" and that part of his job was to do research to find out what that market rate was. ECF No. 146-1 at 9:8–10:3. The plaintiffs argue that this shows that Mr. Lane determined the rates at which field employees were paid. But that's not what Mr. Lane's testimony shows. His testimony shows that the decision to pay at market rate was made before he ever arrived at the company. *Id.* at 9:9–10 ("Well, the rates of pay have been set up for a long time."). The testimony then reveals that Mr. Lane did not "set" the market rate, but merely did research to discover what that rate was. In other words, Mr. Lane made no decision that determined the market rate. Rather, he discovered what it already was. This evidence does not support a conclusion that Mr. Lane determined the rate or method of pay.

Second, the plaintiffs argue that Mr. Lane would consult with the corporate office to determine the rate of pay for new hires. ECF No. 147 at 7 (citing ECF No. 146-1 at 25:5–15). But the portions of the deposition the plaintiffs cite do not support that argument. That portion of the deposition clearly states that it was another, Mr. Broussard, who made the company's financial

decisions. ECF No. 146-1 at 25:5–9. And Mr. Broussard would tell Mr. Lane whether the company could afford to hire additional field workers. *Id.* at 9–15. Nothing indicates that Mr. Lane actually made the decision of whether the company could afford to hire new hands or decided how much to pay new or existing employees.

Third, the plaintiffs argue that Mr. Lane had some degree of input and control over bonuses at the company. ECF No. 147 at 7 (citing ECF No. 146-1 at 19:11–24, 38:24–39:21). But again, the portions of the deposition that the plaintiffs cite do not support that argument. The plaintiffs' first citation, to 19:11–24, shows only that Mr. Lane knew about the bonuses paid to operators and the basics of how those bonuses were calculated. The passage does not indicate that Mr. Lane had any role in determining the size of any bonus.

The same is true for the plaintiffs' next citation, to 38:24–39:21. This passage discusses the informal nature of the bonus determination meetings and methods. But nowhere does it say that Mr. Lane played any significant role in those meetings, or any role at all.

The plaintiffs point to no evidence that Mr. Lane played any role in determining the rate or method of pay at Performance and Epic. Therefore, this factor weighs in favor of granting summary judgment.

## V. There Is No Evidence that Mr. Lane Maintained Employee Records.

There is no serious contention that Mr. Lane maintained employee records. Nothing in either Mr. Lane's deposition or his affidavit indicate that he maintained employee records. At most, the deposition shows that Mr. Lane knew where company records were located. ECF No. 146-1 at 32:6–23. No evidence exists showing either that Mr. Lane even had access to employee records, much less that Mr. Lane maintained them. Therefore, this factor also weighs in favor of granting summary judgment.

## VI. Conclusion—The Plaintiffs Present Sufficient Evidence to Survive Summary Judgment.

Looking at the entire body of evidence before the Court, the Court concludes that there is sufficient evidence for a jury reasonably to conclude that the first and second prongs of the economic-realities test are met. Though there is no evidence to meet the third and fourth prongs, the Court is mindful that "a party need not establish each element in every case." *Orozco*, 757 F.3d at 448. Summary judgment in favor of a putative employer is likely appropriate in cases where none of the prongs are satisfied. *See Gray*, 673 F.3d at 357 ("While each element need not be present in every case, finding employer status where none of the factors is present would make the test meaningless."). But in a case like this, where some, but not all, of the prongs are satisfied, the Court thinks that a reasonable jury could fairly conclude either that Mr. Lane was an employer or that Mr. Lane was not an employer. As such, there remains a genuine dispute of material fact and Mr. Lane is not entitled to judgment as a matter of law.

## Conclusion

There remains a genuine dispute of material fact in Mr. Lane's case—whether, as a matter of economic reality, he was an employer within the meaning of the FLSA. Therefore, summary judgment is inappropriate and Mr. Lane's Motion for Summary Judgment [ECF No. 146] will be denied.

A separate judgment shall issue consistent with this opinion.

Signed: July _____5_____, 2018.

HONORABLE ROYCE LAMBERTH
UNITED STATES DISTRICT JUDGE